## DAVIS *v.* BROWN.

1. An indorser of a promissory note is a competent witness to prove an agreement in writing made with its holder at the time of his indorsement, that he shall not be held liable thereon, where the paper has not afterwards been put into circulation, but is held by the party to whom the indorsement was made.

2. *Bank of United States* v. *Dunn*, 6 Pet. 51, explained and qualified.

8. An agreement like the one mentioned above, and the indorsement, taken together, are equivalent, so far as the holder of the note is concerned, to an indorsement without recourse to the indorser.

4. The omission of indorsers on a series of notes, transferred to the holder in settlement of their own note held by him, upon an agreement in writing that they should not be held liable on their indorsement, to set up the agreement as a defence to an action against them, brought by the holder on two of the notes, does not preclude them from setting up the agreement in a second action by the holder on others of the same series of notes. The judgment in the original action does not operate as an estoppel against showing the existence and validity of the agreement in the second action.

5. When a judgment in one action is offered in evidence in a subsequent action between the same parties upon a different demand, it operates as an estoppel only upon the matter actually at issue and determined in the original action; and such matter, when not disclosed by the pleadings, must be shown by extrinsic evidence.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

This action was against the defendants, as second indorsers of certain promissory notes, transferred by them to the Ocean National Bank of the city of New York. The bank having failed, the notes came into the possession of the plaintiff, as its receiver. The facts are sufficiently stated in the opinion of

the court. The defendants obtained judgment, and the plaintiff brought the case here.

Argued by *Mr. H. G. Miller* for the plaintiff in error, and submitted by *Mr. U. P. Smith* and *Mr. Stephen Sibley* for the defendants in error.

MR. JUSTICE FIELD delivered the opinion of the court.

This was an action against the defendants, as second indorsers upon ten promissory notes of one McOmber, made at Saratoga Springs, in the State of New York, in June, 1870, each for $500, and payable to his order in from thirty-two to forty-one months after date.

The defence set up to defeat the action was that the notes in suit were transferred in June, 1871, with other notes of the same party of like amount and date, to the Ocean National Bank by the defendants, in part satisfaction of a note of their own then past due, the balance being paid in cash, and were indorsed by the defendants as a mere matter of form, upon an agreement in writing of the bank that they should not be held liable on their indorsements, or be sued thereon.

On the trial, Harvey Brown, one of the defendants, was called as a witness to prove the matters thus set up as a defence, and was permitted, against the objection of the plaintiff, to testify to the settlement of the note of the defendants, the transfer for that purpose to the Ocean National Bank of the McOmber notes, and their indorsement by the defendants under the agreement of the bank not to hold them liable as indorsers; and that this agreement was in writing, and was destroyed in the great fire at Chicago, in October, 1871.

To meet and repel the defence founded upon this agreement, the plaintiff produced and gave in evidence a record of a judgment, recovered by him against the same defendants upon two other notes of the same party, of like amount and date as those in suit, except that they became due at an earlier day, which were part of the series of notes transferred by the defendants to the bank, and indorsed by them, in settlement of their own note, as already mentioned, and were included in the agreement as part of the same transaction.

The questions presented for our determination relate to the

competency of the witness Brown, and the admissibility of the evidence of the alleged agreement of the bank, and to the operation of the judgment mentioned as an estoppel against the defendants setting up any defence founded upon the agreement.

The objection to the witness arose from his being a party to the notes, and, as such, it is contended that he was incompetent to impeach or discredit the same, or to show that his liability was not such as his indorsement imported. The case of *The Bank of the United States* v. *Dunn*, reported in the 6th of Peters, is cited in support of this position. There, the indorser of a note had been permitted by the court below to testify, against the objection of the plaintiff in the action, to a verbal understanding with the cashier and president of the bank which took the note, that he was not to incur any responsibility, or, at least, would not be held liable on the note, until the security pledged for its payment had been exhausted. The admission of the witness this court considered erroneous, holding that no one who was a party to a negotiable note could be permitted by his own testimony to invalidate it, which, in that case, meant that no one could be permitted to show that a note indorsed by him was void in its inception, or that his indorsement did not impose the liability which the law attached to it. The opinion which announces the decision proceeds upon two grounds: 1st, That the evidence would contradict the terms of the instrument, or change their legal import; and, 2d, that it would be against public policy, as tending to destroy the credit of commercial paper, to allow one who had given it the sanction of his name, and thus added value and currency to the instrument, to testify that it was executed or indorsed by him under such circumstances as to impair his obligation upon it.

This last position was supported by reference to the celebrated case of *Walton* v. *Shelley*, 1 T. R. 296, decided in 1786, where the indorser of a promissory note was held by the King's Bench to be inadmissible as a witness, on grounds of public policy, to prove the note void for usury in its inception; Lord Mansfield observing, that it was " of consequence to mankind that no person should hang out false colors to deceive them, by first affixing his signature to a paper, and then afterwards giving testimony to invalidate it." Aside

from the assumed estoppel of the parties from their position on the paper, the maxim of the Roman law, that no one alleging his own turpitude shall be heard (*nemo allegans suam turpitudinem est audiendus*), was cited to justify the decision. That maxim was plainly misapplied here by the great Chief Justice ; for it is not a rule of evidence, but a rule applicable to parties seeking to enforce rights founded upon illegal or criminal considerations. The meaning of the maxim is, that no one shall be heard in a court of justice to allege his own turpitude as a foundation of a claim or right ; it does not import that a man shall not be heard who testifies to his own turpitude or criminality, however much his testimony may be discredited by his character.

The doctrine of *Walton* v. *Shelley* maintained its position in the courts of England only for a few years. In 1798, it was by the same court overruled in the case of *Jordaine* v. *Lashbrooke*, 7 id. 601, Lord Kenyon having succeeded Mansfield as Chief Justice. Since then, the rule has prevailed in the courts of that country, that a party to any instrument, whether negotiable or not, if otherwise qualified, is competent to prove any fact affecting its validity ; the objection to the witness, from his connection with the making or circulation of the instrument, only going to his credibility, and not to his competency. In this country, there has been much diversity of opinion upon the point, some of the State courts following the rule of *Walton* v. *Shelley*, while others have adopted the later English rule. The general tendency of decisions here is to disregard all objections to the competency of witnesses, and to allow their position and character to affect only their credibility. This diversity of opinion could not have existed, unless there were grave reasons for doubting the soundness of the original decision. Be that as it may, it has led those courts which, on considerations of commercial policy, adopted the rule of *Walton* v. *Shelley* to qualify the rule, so as to limit its application strictly to cases arising on negotiable bills and notes, and to cases where the transaction affecting the validity of the paper was not between the parties in suit. The holders of commercial paper, who enter into agreements or transactions with the makers or indorsers, affecting its validity or negotiability, can-

not invoke protection against the infirmity which they have aided to create. There are no considerations of commercial policy which can exclude the parties in such cases from testifying to the facts. Thus, in *Fox* v. *Whitney*, 16 Mass. 118, the Supreme Court of Massachusetts, which had previously recognized the rule in *Walton* v. *Shelley*, held that the rule applied only to a case where a man, by putting his name to a negotiable security, had given currency and credit to it, and did not apply to a case between original parties, where the paper had not been put into circulation, and each of the parties was cognizant of all the facts. This decision meets our concurrence, and, if it qualifies the decision in the case of *Bank* v. *Dunn*, we think the qualification a just and proper one.

These considerations dispose of the objection to the competency of the witness Brown. The notes of McOmber were never put into circulation by the Ocean National Bank. No one, therefore, has been misled by the indorsement of the defendants; no false colors have been held out by them. No credit or currency has been given by their name. The receiver has, with reference to the notes, no greater right than the bank has: he stands in its shoes. If the bank could not have enforced a liability upon the defendants against its agreement that they should not be held liable, the receiver cannot enforce it. The agreement itself is not immoral nor illegal. The defendants by their act ran the risk of being charged upon the notes; they would have been liable had the notes been put into circulation. But beyond this risk they were protected by the agreement; upon that they could rely, so long as the bank held the notes.

The objection that the agreement was inadmissible because it tended to vary and destroy the legal effect of the indorsement is not tenable. The agreement, being in writing, is to be taken and considered in connection with the indorsement, and the two are to be construed together. So far as the bank was concerned, the agreement made the indorsement equivalent to one without recourse to the indorsers.

The next question for determination relates to the operation of the judgment recovered by the plaintiff against the defendants, as an estoppel against their setting up the defence founded

upon the agreement. The action in which that judgmel t was recovered was brought in the same court as the present action, against the defendants as second indorsers upon two not s, which were part of the series of McOmber notes, transferred to the bank of the defendants in settlement of their own note; and their indorsement was embraced in its agreement. The defendants pleaded the general issue; but the court finds that, by the advice of counsel learned in the law, they defended the action in good faith solely upon the ground that their liability had not been fixed as indorsers by due prosecution of the makers of the notes, as required by the laws of Illinois; and that this defence was not sustained, for the reason that it appeared that the makers of the notes resided in the State of New York, and that the indorsement was made there. The agreement of the bank not to hold them liable as indorsers was not pleaded nor relied upon; yet it is contended by counsel, that, inasmuch as it might have been thus pleaded and relied upon, therefore the judgment is an estoppel against the setting up of that agreement as a defence in a subsequent action between the same parties upon other notes, equally as if its validity and efficacy had been litigated and determined.

In taking this position, counsel have confounded the operation of a judgment upon the demand involved in the action, in which the judgment was rendered, with its operation as an estoppel in another action between the parties upon a different demand. So far as the demand involved in the action is concerned, the judgment has closed all controversy; its validity is no longer open to contestation, whatever might have been said or proved at the trial for or against it. The judgment is not only conclusive as to what was actually determined respecting such demand, but as to every matter which might have been brought forward and determined respecting it; and that is all that the language means which is quoted by counsel from opinions in adjudged cases, in seeming consonance with his position.

When a judgment is offered in evidence in a subsequent action between the same parties upon a different demand, it operates as an estoppel only upon the matter actually at issue and determined in the original action; and such matter, when not disclosed by the pleadings, must be shown by extrinsic

evidence. We have recently had occasion, in the case of *Cromwell* v. *County of Sac, supra,* p. 351, to go over this ground and point out the distinction mentioned; and it is unnecessary to repeat what we there said. See Bigelow on Estoppel; Note to the case of the Duchess of Kingston, in Smith's Lead. Cas.; and Robinson's Practice, vol. vii. The position of counsel is clearly untenable.

As to the objection of want of authority in the president of the bank to make the agreement with the defendants, the finding of the court is conclusive. His authority was a fact to be determined by the court, under the stipulation waiving a jury, and we do not sit in review of questions of fact.

*Judgment affirmed.*

Mr. Justice Clifford dissented.