RADFORD, Assignee, *v.* FOLSOM.

*(District Court, E. D. Michigan.* June 14, 1880.)

1. JUDGMENT—ESTOPPEL—SAME CAUSE OF ACTION.—Where a question is distinctly put in issue, and tried and decided, the judgment operates as an estoppel *as to that question* in any subsequent suit between the same parties, whether the second suit be upon the same or some other cause of action.

2. SAME—SAME—PARTIES.—So, when an issue is made in a case and decided, whether with or without trial, the judgment is conclusive between the same parties in any subsequent action for the *same* cause, and as to all questions which were, or *might have been*, raised upon the first trial.

3. SAME—SAME—DIFFERENT CAUSE OF ACTION.—But, where a suit is tried and determined, the mere fact that in that suit a question might have been raised, tried, and determined, does not prevent the raising of such question in a suit upon a *different* cause of action.

A. began a suit in Iowa against B., to obtain his possession and quiet his title to certain lands standing in A.'s name. Pending this suit A. conveyed a portion of the lands to C., who intervened as coplaintiff, and asked that this portion might be set off to her. The case was tried and submitted. Before decision A. was adjudicated a bankrupt, and his assignee was substituted as plaintiff, and the lands still standing in A.'s name were set off to his assignee, but no question was raised as to the validity of the conveyance from A. to C. Subsequently A.'s assignee filed a bill against C. to have the conveyance set aside as a fraud upon A.'s creditors. *Held*, that the proceedings in Iowa were not an estoppel. *Held*, also, upon the facts, that the conveyance was fraudulent and void.

In Equity.

BROWN, D. J. This is a bill brought by the complainant, as assignee of Simeon and Frank Folsom, to set aside two deeds and a mortgage executed by Frank Folsom and wife to Eliza Folsom, the defendant, upon the ground that these conveyances were made by said Frank Folsom and wife at a time when he was hopelessly insolvent, without consideration, and for the purpose of defrauding his creditors, by placing the property beyond their reach. The first conveyance was a deed dated February 18, 1875, conveying to said defendant certain store property situated in the city of Council Bluffs, Iowa. The second was a deed dated October 5, 1875, and

conveyed a certain house and lot in said city. The third conveyance was a mortgage bearing date February 1, 1876, conveying about 1,000 acres of farming lands in Pottawattamie county, Iowa, and purporting to secure the payment of a certain note of $4,000, given to the defendant by S. Folsom & Co., dated September 15, 1875.

A preliminary objection was taken at the hearing to the effect that the validity of these conveyances, and of the title of the defendant to the property in question, was now *res adjudicata*, by reason of certain proceedings in the circuit court of Pottawattamie county, Iowa. It seems that in June, 1871, Jeremiah Folsom deeded the real estate in question to his brother Simeon, taking back from him a bond to reconvey at the end of ten years, should certain conditions therein named be fulfilled. Afterwards Simeon conveyed to Frank under a power of sale said to be conveyed in said bond. Afterwards, and in 1872 or 1873, Frank, claiming to own the real estate by virtue of the deed from Simeon, and also claiming that Jeremiah had broken his covenant, began an action in the circuit court of Pottawattamie county, asking that his title to this real estate be quieted as against Jeremiah Folsom and his wife, whom he made defendants, and that he might be decreed to be the owner in fee of the premises.

Defendants answered, setting up in substance that the deed and bond constituted simply a security or mortgage, and not an absolute conveyance as between the parties, and that Frank had full notice of this fact, and consequently had no better title than Simeon. Defendants also filed a cross-bill, asking that the transaction be decreed to be a mortgage; that the same be redeemed, that an accounting might be had, and a time fixed within which the defendants might pay such sum and retain their title to the premises. To this answer and cross petition Frank Folsom replied, and the case was at issue. After the issues were thus joined, Frank conveyed a large portion of said real estate by two warranty deeds to Eliza F. Folsom, the defendant in this suit. Before the hearing Eliza filed an intervening petition, averring that she had become the owner of a portion of the

premises described in the petition by purchase from Frank, and praying that her title might be established. Sometime thereafter the cause was argued upon the pleadings and proofs, and submitted to the court, and by the court taken under advisement. Subsequently, and before a decision was rendered, Frank Folsom was adjudicated a bankrupt in this court, and the plaintiff herein, having been appointed his assignee, appeared in the cause in Iowa, moved the court that the submission be set aside, and that he be substituted as party plaintiff for Frank Folsom; that all after proceedings in the cause be in his name, and that he be permitted to file the necessary pleadings in that behalf. The court refused to set aside the submission, but allowed him to be substituted as plaintiff, and to file an amendment to the petition setting up the fact of the bankruptcy of Folsom, and his appointment as assignee. This cause had already been commenced in this court. Afterwards, the court rendered a decree that the bond and deed were intended as a mortgage; that Frank Folsom took with notice; that his sister Eliza took *pendente lite*, and also with notice. In accordance with the prayer of the cross-bill the court directed an accounting, fixing the amount necessary to redeem, and provided that redemption might be made on or before June 1, 1880, which, if made, should then vest the property in the defendants free of any claim or lien in favor of the plaintiff or intervenor, and further provided that such redemption money should remain in court until the prospective rights of the plaintiff and intervenor should be determined; that if the redemption was not made, then the title to the land deeded by Frank to the intervenor should rest in her, and the residue in the plaintiff Radford, "free and clear of any lien or claim of defendants, or either of them."

The question now arises whether this decree vesting the title to a portion of the property in Frank, and to another portion in Eliza, estops the plaintiff in this suit from questioning the validity of the conveyance from Frank to Eliza made pending the legislation in Iowa. The general principles applicable to this class of questions are well settled.

When a question is distinctly put in issue, and tried and

decided, the judgment operates as an estoppel *as to that question* in any subsequent suit between the same parties, whether the second suit be upon the same or upon some other cause of action. *Hopkins* v. *Lee*, 6 Wheat. 109; *Campbell* v. *Cross*, 39 Ind. 155–158; *Bank of the U. S.* v. *Beverly*, 1 How. 134–135; *Davis* v. *Brown*, 94 U. S. 423. So, when an issue is made in a case and decided, whether with or without trial, the judgment is conclusive between the same parties in any subsequent action for the same cause, and as to all questions which were or *might have been* raised upon the first trial. *Stockton* v. *Ford*, 18 How. 418; *Mallony* v. *Horan*, 49 N. Y. 111. But, where a suit is tried and determined between parties, the mere fact that in that suit a question might have been raised, tried, and determined, does not prevent the raising of such question in a suit upon a *different* cause of action. *Cromwell* v. *The County of Sac*, 94 U. S. 356; *Davis* v. *Brown*, Id. 423–428; *Russell* v. *Rau*, Id. 602; *Nims* v. *Vaughn*, 40 Mich. 356–360; *Jacobson* v. *Miller*, 41 Mich. 90–92. While the proceedings in the Iowa case undoubtedly would operate as an estoppel as to all questions raised or which might have been raised between the plaintiff and Jeremiah Folsom, and while, if an issue had been raised in that action between Frank Folsom and Eliza, the plaintiff here would have been estopped to question the judgment of the court upon that issue, it seems to me clear that the plaintiff was not bound to raise an issue with his co-plaintiff in that case; and it seems to me very questionable whether the court would or ought to have permitted it to be done. The case had been fully heard, argued, and submitted, and was then simply held under advisement by the court. It is impossible to say that with a case in this situation the plaintiff was entitled, *as of right*, to amend his pleadings, frame a new and totally distinct issue with his co-plaintiff, and thus delay the final disposition of the case. The effect would be to delay an adjudication of Jeremiah's rights until another issue had been decided, to which he was an entire stranger. All that Radford would be required to do under the circumstances was to take the case as he found it, and protect the interests of the creditors in that case. He

could not be expected to make a new and different case. The action of the court in refusing to set aside the submission, upon his application, is significant of the course which would have been taken had he undertaken to introduce a new issue. The decree, too, purports upon its face to settle nothing except the rights of the parties as *against the defendants,* and there is no hint of any question raised between the plaintiffs.

Section 2689 of the Iowa Code indicates very clearly that amendments are a matter of discretion with the court. "The court may, on motion of either party, at any time, in furtherance of justice, and on such terms as may be proper, permit such party to amend any pleadings or proceedings by striking out the name of a party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by asserting other allegations material to the case, or when the amendment does not change substantially the claim or defence by conforming the pleadings or proceedings to the facts proved." Of course, it is impossible for us to say how the court would have exercised its discretion, but it would seem the proper course, as the case was instituted solely for the purpose of determining the plaintiff's rights as against Jeremiah Folsom, and no question had been raised as between the plaintiffs, to remit the parties to this court, where a suit had already been launched to determine the validity of the conveyance from Frank to Eliza. The defence of *res adjudicata* is not maintained; neither does the case present any difficulty upon the merits. It is said that the arrangement under which these conveyances were executed was made in the latter part of 1874, between Frank and Simeon Folsom, acting for the defendant Eliza. This arrangement was not in writing, nor can the witnesses point to any definite conversation at which the bargain was perfected. No exact time is specified, and we are left to infer that the arrangement was a mere loose understanding between the parties. The testimony is abundant to the effect that at this time Simeon and Frank Folsom, who had been in partnership since 1860, were indebted in about the sum of $35,000, increased during

the year 1875 by $10,000, raised at the savings bank in this city; that their assets beyond the lands in Iowa were of very little market value, although there is evidence that certain stocks which subsequently became worthless were not so considered at that time. They did a business as wool merchants, sometimes amounting to as much as $350,000 a year, but this seems to have been done entirely upon capital advanced by eastern parties. By far the greater portion of their valuable assets consisted of the lands in question. They had ceased paying their paper as it became due, and made no response to repeated demands of their creditors for money. In some cases they had even ceased to pay the interest upon their notes. They had also ceased paying premiums upon life insurance policies in which they had invested very heavily; indeed, for two or three years prior to that, their annual premiums had amounted to more than $3,000. In short, they were insolvent.

There was, however, a consideration for these conveyances. On August 21, 1865, the Connecticut Mutual Life Insurance Company issued a policy upon the 10-year life plan, on the life of Simeon Folsom, in favor of Eliza Folsom, his daughter, for $10,000, the premium to be paid in ten annual payments, but with the proviso that if, after two years, the assured should elect to pay no further premiums it was to be an insurance *pro rata*. Nine annual premiums were paid as they became due. The policy lapsed, in 1874, the last premium having been paid in August, 1873, without any notice being given to the company of any election to pay no further. This policy was assigned by Eliza Folsom, on the seventh of February, 1875, to the wife of Frank Folsom, and is admitted to be the only consideration for the conveyances by Frank and his wife of the Council Bluffs property. This policy was not taken out by Eliza Folsom, was never in her possession, nor did she have anything to do with the payment of the premiums. She had heard of it from her father, and this was all she knew about it. The value of the policy on the eighteenth day of February, 1875, reckoned upon the basis that it had not been forfeited, was $3,739.11. The

company would not have paid this and cancelled the policy, but would have allowed that amount for it if new insurance were purchased.    There is evidence, however, tending to show that at this time the insured, Simeon Folsom, was afflicted with an incurable disease; that his physicians had pronounced his case hopeless, and that he would probably not survive a year.    Under these circumstances the policy might justly be considered as worth a much larger amount' than the company would have paid for it.

As the title to the lands at that time was in litigation, and their then value somewhat uncertain, I cannot say that the consideration paid for them was grossly inadequate; but I have no doubt that the conveyance was intended by all parties as a fraud upon the creditors of Simeon and Frank Folsom.    The exchange was negotiated entirely by Simeon, acting for his daughter, who, in fact, knew nothing of the transaction.    Indeed, she can scarcely be considered a real party to the agreement. *Stat nominis umbra.* His knowledge was her knowledge, and the evidence that he intended to withdraw this property from his creditors is overwhelming.    Had the consideration for the lands been received by Frank Folsom himself, and turned over to his assignee, there might be some reason for claiming the transaction to be valid; but the effect of it was to withdraw from the assets of the estate land exceeding $20,000 in value, and to put the consideration where it could only be reached by further litigation.    I have not deemed it necessary to review the facts at length.    They seem to me to constitute a very clear case of fraud, and I feel compelled to direct that a decree be entered in favor of the complainant.