Jones *v.* Matthews.

## C. H. JONES *v.* S. G. MATTHEWS *et al.*

WITNESS. *Accommodation endorser.* An accommodation endorser is a competent witness, in a suit brought against him by an innocent holder for value before maturity, to prove that a material alteration of the note had been made after he had endorsed it and before its delivery to the person for whose benefit it was made.

### FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county. N. BAXTER, J.

THRUSTON & BRADFORD for Jones.

SMITH, BAXTER & ALLISON for Matthews.

COOPER, J., delivered the opinion of the court.

Suit upon a note, brought by a person claiming to be an innocent holder for value before maturity against two accommodation endorsers. Verdict and judgment for defendants, and plaintiff appealed.

The note was one of a series of notes given for rent. The defense was that after the note had been endorsed by the defendants for the accommodation of the makers, it was materially altered by the insertion of the words, "To bear interest at the rate of ten per cent. after maturity." The trial judge excluded the testimony of the maker of the note who delivered it to the original creditor, and who was offered as a witness by the defendants to prove that he made the alteration, after the note was endorsed by the defendants, in the presence and at the request of the creditor. But the judge admitted the defendants themselves to testify that when they endorsed the note, as they did for the accommodation of the makers, and delivered it to one of the makers, it did not contain any clause calling for interest, and that it was afterwards altered by the insertion of the words quoted, without their knowledge, consent or authority. The note itself appears to have been a printed form, the last printed words being "value received." Immediately opposite, and on a line with these words, is the signature of the first maker of the note. The interest clause is commenced just above the words "value received," and continued on a line to the word "after" inclusive, which last word is so near to the signature of the maker as to leave no interval for any other writing. The word "maturity" of the interest clause is therefore carried down and written immediately after the printed words "value received."

The plaintiff objected to the admission of the testimony of the defendants, and the ruling of the court

on the objection is now assigned as error. And the argument is that, upon grounds of public policy, the defendants, as endorsers of the note, were incompetent to invalidate it. The discussion resuscitates the famous cases of *Walton* v. *Shelley*, 1 Term. Rep., 296, and *Jordaine* v. *Lashbrooke*, 7 Term Rep., 599, and revives the fierce, long-continued and often renewed struggles to which they gave rise. When Professor Greenleaf wrote his treatise on the law of evidence, while conceding that the ruling in *Jordaine* v. *Lashbrooke*, which overruled *Walton* v. *Shelley*, had been adhered to in England, he thought the weight of American authority was in favor of the earlier ruling, that a party to a negotiable paper is not competent to invalidate it. At the present day, the latest writer on negotiable securities thinks the better opinion to be that negotiable instruments enjoy no immunity from the general doctrine of evidence, and that any party to a written contract, negotiable or otherwise, is competent to testify as to its invalidity: 2 Dan. Neg. Inst., sec. 1217. The trial judge in this case, with commendable impartiality, applied the doctrine of *Walton* v. *Shelley* to the maker of the note, and the doctrine of *Jordaine* v. *Lashbrooke* to the endorsers. It is only the last part of his ruling that comes before us for revision.

In this State, as elsewhere, the "battle of the books" has been fought several times, with varying success. In the earliest of our cases in which the question was raised, it was argued by three lawyers on each side, two of whom, Catron and Crabb, were afterwards judges of this court, one of them becoming

an associate justice of the Supreme Court of the United States.    The case was decided by three able judges unanimously, two of them, Haywood and Whyte, writing concurring opinions: *Stump* v. *Napier*, 2 Yer., 35. The court threw its weight decidedly in favor of the later ruling of the King's Bench.    Both of the judges, who wrote opinions, comment on the maxim of the civil law, "*nemo allegans suam turpitudinem est audiendus,*" with which Lord Mansfield sought to sustain his conclusion in *Walton* v. *Shelley,* and show that it has no application to witnesses, as does Mr. Justice Field, more than half a century afterwards, in *Davis* v. *Brown,* 94 U. S., 426.    The same thing had been done in the still earlier case of *Townsend* v. *Bush,* 1 Conn., 260.    The case of *Stump* v. *Napier* was decided in January, 1821.    In December, 1859, the point came before this court whether the admissions of a party to a note while in possession of it were admissible against an assignee after maturity.    The admissions were held to be competent, and the eminent judge, happily still living, who delivered the opinion of the court, said: "But it is argued that it is a rule of law, founded on public policy, that no party who has signed or endorsed a negotiable paper shall ever be permitted to invalidate it, and that, *a fortiori,* it must be so as to his declarations. It is sufficient for us to say, the established rule is otherwise in our State."    He cites the preceding case as having established the rule: *Drennon* v. *Smith,* 3 Head, 389.    In the intermediate time, and in different cases, two eminent judges of this court, one of

them also happily still living, rather *arguendo* than by way of direct adjudication, express a decided opinion in favor of the doctrine of *Walton* v. *Shelley: Oliver* v. *Bank,* 11 Hum., 74; *Smithwick* v. *Anderson,* 2 Swan, 573. In neither of these cases does it appear that *Stump* v. *Napier* was called to the attention of the court.

A large majority of the highest courts of the States have adopted the later English rule, and have held the parties to negotiable paper competent witnesses for all purposes. The Supreme Court of the United States has adhered to the earlier rule, although the original cause in which it was announced has been virtually overruled in the case cited above. In this war of giants, it behooves us to move cautiously, and, taking warning from the past, to confine our decision to the case before us.

In *Walton* v. *Shelley,* the endorser of a promissory note was held to be inadmissible as a witness, on grounds of public policy, to prove the note void for usury in its inception. The text writers treat this decision, and the authorities which have followed it, as limiting the rule to cases where the witness is called to prove that the security was void in its creation, or at the time when the witness gave it currency: 1 Gr. Ev., sec. 383; 2 Par. N. & B., 470. "And this," adds Greenleaf, "in the ordinary course of business, and without any mark or intimation to put the receiver on his guard": 1 Gr. Ev., sec. 385 and note. An endorser may, therefore, prove any fact not going to the original infirmity of the security when

endorsed by him: *Barker* v. *Prentiss*, 6 Mass., 430; *Buck* v. *Appleton*, 2 Shepl., 284; *Stone* v. *Vance*, 6 Ohio, 246. As, for example, that the note had been paid after being put in circulation: *Greenough* v. *West*, 8 N. H., 400. Or that after he had endorsed and delivered the note to a third person to be presented to a bank for discount, the third person fraudulently put it into the hands of a broker: *Woodhull* v. *Holmes*, 10 Johns., 231. Or that the note had been fraudulently altered: *Parker* v. *Hanson*, 7 Mass., 470. If the alteration were of a character to indicate to a person of ordinary prudence that it was made after the execution of the note, the purchaser would not be an innocent holder, and this point was left to the jury in the present case under a proper charge.

If, therefore, the note was altered by the insertion of the words calling for ten per cent. interest after the defendants, as endorsers, had given it currency, the defendants would be competent to prove the fact. Excluding the testimony of the maker of the note, whose proof tended to show that the alteration was made by him at the time he delivered the note to his lessor or creditor, the evidence was to the effect that the alteration was made after the endorsement, and before the delivery to the creditor. And the trial judge charged that it was not material that the alteration should have been made before the note was delivered to the creditor, or at his instance. In other words, he instructed the jury that the alteration would discharge the endorsers, if made without their knowledge or consent after they had endorsed the note,

and before the actual putting of the note into circulation. The inception or creation of the note as to the endorsers was when they put their names upon it for the accommodation of the makers. If there be any rule of public policy which closes their mouth as witnesses, it must be limited to an invalidity then existing. It could not extend beyond that date; for, if so, they would be at the mercy of the maker, and estopped to show even a change in the amount of the note, provided it be so skillfully done as to escape ordinary observation. The estoppel, on the ground of public policy, can only relate to the note actually executed by the endorsers, not to another and a different note.

The allegation of the plea, that the alteration was made after the note had been "signed, endorsed and delivered by the defendants," may, in this view, be treated as the delivery by them to the maker, anything further being considered as surplusage, his Honor so expressly stating in his charge.

There is no error, and the judgment will be affirmed.