# THE PORTSMOUTH SAVINGS BANK

*v.*

# WILSON.

PROMISSORY NOTES; ALTERATIONS BY ERASURE; DEMAND AND NOTICE, WAIVER OF; INDORSEMENT.

1. There is no presumption in law that the erasure of the printed words "and grace" on a promissory note payable "in one year with interest and grace," was after indorsement. Nor is such an erasure a material alteration.
2. In an action by a bank against the payee of a promissory note made payable to T. D. W. and containing on its back the printed words, "Liable without demand or notice," under which were the signatures of W. E. H. and T. D. W., in the order given, it was *held* that the payee had waived demand and notice.
3. When a stranger indorses his name on a promissory note before the payee, he must in the absence of proof be regarded either as a guarantor or as an original promissor, and as such is not like an indorser entitled to demand and notice.

No. 340.  Submitted November 20, 1894.  Decided December 3, 1894.

HEARING on an appeal by the plaintiff from a judgment on a verdict directed for the defendant, in an action on a promissory note. *Reversed.*

The COURT in its opinion stated the case as follows:

The appellant, "The Portsmouth Savings Bank," of Portsmouth, in the State of New Hampshire, a body corporate under and by virtue of the laws of that State, sued the appellee, Theodore D. Wilson, in the Supreme Court of the District of Columbia, upon a promissory note indorsed by the appellee, and which is in the following terms, partly printed and partly in writing, a blank form printed for the use of the bank having been used for the purpose:

" PORTSMOUTH SAVINGS BANK,

" $2,500.00.          Portsmouth, N. H., Oct. 5th, 1889.

" For value received I promise to pay Theodore D. Wilson or order, at the Portsmouth Savings Bank, twenty-five hundred dollars, in one year with interest [and grace], semi-annually in advance.          (Signed)          E. G. PEIRCE."

The words *"and grace,"* which appeared in print in the blank form, were stricken out by drawing a pen through them, but it does not appear when this was done. Indorsed on the back of the note was a memorandum at the top, as follows: " Interest paid to Apr. 5, 1890," which was in writing ; and about the middle of the note the words in small print, "Liable without demand or notice." Underneath these were two signatures in the order given, " W. E. Hadley, T. D. Wilson," the latter of which was shown, and is conceded to be, the indorsement of the appellee, Theodore D. Wilson, in whose favor the note had been drawn.

The suit was in assumpsit, with three counts in the declaration, two of them alleging the execution of the note, due presentation thereof for payment at maturity, and notice to the indorser Wilson ; and the third count alleging the execution of the note and express waiver of demand and notice by the indorser Wilson by the words printed on the back of the note. The defendant pleaded the general issue, failure of the holder to make demand and give due notice of dishonor, and denial of any waiver by him of his right to have such demand and notice. The case went to trial upon the issues raised by these pleas.

At the trial the plaintiff proved the signature of the defendant Wilson, and offered the note with its indorsements in evidence. Then, with the view of proving an acknowledgment of liability on the part of the defendant subsequent to the maturity of the note, and a waiver by him thereby of any right which he might have had to demand and notice, the testimony of an attorney of the plaintiff was adduced to show negotiations had between him and the

defendant at the city of Washington, on or about the 9th day of January, 1891, in which it was claimed that the defendant admitted his liability, made some futile excuses for non-payment, and offered to settle the claim of the bank by the payment of a smaller amount.

The defendant testified on his own behalf, that he had indorsed the note in this city; that he had no recollection of seeing and did not observe the printed words on the back of the note at the time of the indorsement of the note by him or before the note was protested; and that the only notice of non-payment of the note by the maker was a notice of protest dated on the 4th day of October, 1890. He gave an account of the negotiations between him and the attorney for the bank on the 9th of January, 1891, somewhat different from that which was given in the testimony for the plaintiff, yet with no very substantial variation. And he also proceeded to give testimony of another and previous negotiation between himself and the bank in November of 1890, conducted on his behalf by an attorney in Portsmouth, who offered in settlement to pay the sum of $1,500 and interest, if the bank would look for the residue of the claim to Hadley as the first indorser.

Upon this testimony the court instructed the jury to render a verdict for the defendant, which was accordingly done and judgment was entered thereon. The plaintiff duly excepted to the ruling of the court, and brought his case here on appeal.

*Mr. A. A. Birney* and *Mr. Mason N. Richardson*, for the appellant, cited *Lewis* v. *Brehm*, 33 Md. 412; *Martin* v. *Ewing*, 2 Humph. (Tenn.) 561; *Thornton* v. *Wynn*, 12 Wheat. 183; *Loose* v. *Loose*, 36 Pa. St. 538; *Good* v. *Martin*, 95 U. S. 92; *Bank* v. *Ewing*, 78 Ky. 266; *Paishley* v. *Heath*, 69 Me. 90; *Farmer* v. *Rand*, 14 Me. 225; *Lavrey* v. *Steele*, 27 Ind. 168; *Bryant* v. *Bank*, 8 Bush, 43; Tiedeman Com. Paper, 364, and cases cited; *Reynolds* v. *Douglass*, 12 Pet. 497; *Levy* v. *Peters*, 9 S. & R. 125; *Lane* v. *Steward*, 20 Me. 98; *Curtis* v. *Martin*,

20 Ill. 557; *Dixon* v. *Elliott*, 5 C. & P. 644; *Croxin* v. *Worthem*, 5 M. & W. 5; *Spencer* v. *Harvey*, 17 Wend. 489; *Leffingwell* v. *White*, 1 Johns. 99; *Tibbotts* v. *Dond*, 23 Wend. 179.

*Mr. J. Hale Sypher* and *Mr. Robert Christy* for the appellee:

1. It is disclosed by the record and admitted by counsel that the notice of dishonor of the note sued on was irregular and of no force or effect in law. To overcome the failure to make demand and serve notice of dishonor at the maturity of the note, as required by law, plaintiff sets up an alleged waiver printed on the back of the note, in these words: " Liable without demand or notice."

The indorsed waiver was printed in very small type on the back of the note, and was not observed by the appellee when he wrote his name on the back of the note below that of Hadley, already written thereon. His attention was not called thereto, nor did he intend that his indorsement should relate thereto. He did not so intend, and did not by presumption of law waive any right or privilege belonging to him as such indorser.

2. If the printed words on the back of the note constitute a waiver, they were exhausted by the indorsement of Hadley, and defendant is in no sense bound by them. Tiedeman on Commercial Paper, 364; Daniel on Neg. Inst. p. 136, Sec. 1092*d*. See also *Whitehouse* v. *Hanson*, 42 N. H. 9; Daniel on Neg. Inst., p. 645, Sec. 715; *Bryant* v. *Bank*, 8 Bush, 43; *Smith* v. *Lockridge*, 8 Bush, 423; *Bank* v. *Ewing*, 78 Ky. 266; *Lowery* v. *Steele*, 27 Ind. 170; *Bryant* v. *Lord*, 19 Minn. 397; *Woodman* v. *Thurston*, 8 Cush. 157; *Bank* v. *Davis*, 19 Pick. 373; *May* v. *Broisseau*, 8 Leigh, 164; *Duffy* v. *O'Connor*, 7 Baxter, 498; *Halley* v. *Jackson*, 48 Md.; *Duvall* v. *Bank*, 7 Gill & J. 44; *Spencer* v. *Harvey*, 17 Wend. 489.

Mr. Justice MORRIS delivered the opinion of the Court:

Three questions were presented for our consideration: 1st.

Whether the appellee, Wilson, was bound by the printed waiver of demand and notice on the back of the note; 2d. Whether his subsequent negotiations did not amount to an acknowledgment of liability and a waiver of any right that he might previously have had to insist upon demand and notice; 3d. Whether, in any event, the case should not have been left to the jury to determine the question of fact of waiver. Besides these principal questions, it was also insisted on the part of the appellee that there was a material alteration of the note after its return by the appellee subsequently to its indorsement by him, the alleged alteration consisting in the erasure of the words, "*and grace.*" And it was suggested, rather than argued, that the printed words on the back of the note might likewise have been placed there after the appellee's indorsement.

This last suggestion we regard as entirely without foundation. It is in itself improbable; and there is no proof whatever to justify it. The appellee testifies that he does not recollect to have seen those words at the time of his indorsement; but that is not testimony from which the perpetration of a fraud by the bank could be inferred. For the result of such suggestion and of the appellee's testimony is to impute such fraud to the bank. The testimony is utterly insufficient to justify any such inference. We must assume that those words were on the back of the note at the time of the appellee's indorsement, and that if the appellee did not see them, it was his own negligence, which he should not charge upon the bank. Although in small print, they are plain, distinct and perfectly legible; and such words are not unusual in notes intended to be discounted by banks which use such forms.

Neither can we regard the claim that the note was altered after indorsement by the erasure of the words "*and grace*" as entitled to any serious consideration. It is not shown by any testimony when this erasure was made. There is no presumption of law that it was made after the indorsement.

And, in any event, it is no alteration whatever of the legal effect of the note. Without these words, the note, by the general mercantile law, by the law of New Hampshire and by the law of the District of Columbia, was entitled to days of grace. To permit these words to remain in the note would have added nothing whatever to its effect; to take them away would have detracted nothing from it.

The important question in the case is, whether the appellee, by his indorsement, adopted the printed waiver of demand and notice that appeared over the two signatures on the back of the note, and in pursuance of such waiver can be held liable without the usual demand and notice required to fix the liability of indorsers. It is argued on behalf of the appellee that the waiver applies only to the first indorser, Hadley. On behalf of the appellant it is claimed that the waiver applied to both Hadley and the appellee. Both on reason and on authority we have no hesitation in holding that the appellant's claim is well founded.

Indorsement of negotiable paper implies a contract well defined by the mercantile law—a contract to the effect that the indorser will pay and satisfy the amount of money stipulated in the note, if the maker of the note or the person primarily liable does not pay it, provided demand is promptly made upon such person at the date of the maturity of the paper and due notice of non-payment is thereupon given to the indorser. The contract is a conditional contract implied by law from the action of the parties; and it is well settled law that the condition may be waived by the person or persons entitled to its performance, either by express stipulation to that effect or by action or a course of conduct inconsistent with the right to demand such performance. When the waiver enters into the contract at its inception, it is as much a part of the contract as anything else that appears therein and is entitled to have equal effect with the remainder of the contract. And it is of no consequence in this regard whether the waiver appears on the face or on

the back of the instrument. If there are express words anywhere upon the paper constituting a waiver of the condition of demand and notice and intended to operate as such, they will be given effect as such. This doctrine is not controverted by either party, and could not, of course, be seriously questioned. The controversy here is whether the express waiver of demand and notice which appears on the back of this note was intended to apply, and did in fact apply, to both of the indorsers, or only to the first indorser Hadley.

That any indorser might modify his own liability without affecting the liability of other indorsers or their rights, if he does it at the time of making the indorsement, must be conceded, because it is nothing more than an elementary principle of law. It is very plain that the first indorser might, by express words annexed to his indorsement, waive his right to demand and notice; and that the right of any subsequent indorser to have such demand and notice would not be affected thereby. The question of the extent and application of the waiver is one to be determined by the nature of the words and the circumstances of the parties. Now, no reasonable man can suppose for one moment that, in the case of such notes as that here sued on, with reference to which counsel for the appellee repeatedly stated in argument that it was the custom of this bank, as of many banks, to require two indorsers, a printed contract of waiver should be resorted to in order to modify the liability of the first indorser alone, or of one of the two indorsers. Plainly the intention of the bank was to require all persons who should become parties to the paper by indorsement to assent to the waiver of demand and notice. And equally plain is it that any person who becomes a party to such a note by indorsement and subscribes his name to a printed waiver of demand and notice, intends to adopt the printed formula as part of his contract.

There is good reason to hold, as several authors and text writers do, that if the waiver on a promissory note is made

in writing by one of the indorsers over his own signature, it constitutes only his own personal waiver, and is not binding upon the other indorsers who do not become parties to it. But this is where the waiver, by its terms, as by using the singular number, may very properly be held to apply only to the indorser whose immediate action it is. And even in that case it is admitted by these writers that it may be shown that subsequent indorsers have accepted the waiver and become parties to it. But where the words used to express the waiver, no matter by whom written or printed, are such as, naturally and fairly understood, are intended to apply to all persons who become parties to the note after such words are placed upon it, there is no reason and no rule of law that requires us to hold that they do not mean what they purport to mean; and there is nothing in any of the writers cited by the appellee that holds to the contrary.

But there is another good and sufficient reason for holding that the waiver in this case was not exhausted by its supposed application to the signature of W. E. Hadley, the first indorser. Hadley was not an indorser at all, in the technical sense of that term. He was an indorser only in the physical sense that his name was written on the back of the note. Now, whether a person whose name appears as such an indorser on the back of a promissory note is to be regarded as an original promissor, a surety, a guarantor, or an indorser in the technical sense of the term, may be a subject for testimony. But in the absence of proof, the rule of law is well settled for us that he must be regarded either as a guarantor or as an original promissor. The Supreme Court of the United States, in the case of *Good* v. *Martin*, 95 U. S. 91, by Mr. Justice Clifford, said:

" Decided cases almost innumerable affirm the rule that, if one not the promisee indorses his name in blank on a negotiable promissory note before it is indorsed by the payee, and before it is delivered to take effect as a promissory note, the law presumes that he intended to give it credit by

becoming liable to pay it either as guarantor or as an original promissor. *Bryant* v. *Eastman*, 7 Cush. 111; *Benthal* v. *Judkins*, 13 Metc. 265; *Colbun* v. *Averill*, 30 Maine, 310."

It seems to be supposed by the counsel for appellee that to the contrary of this is the case of *Whitehouse* v. *Hanson*, 42 N. H. 9; and thence it is argued that this note having been executed in New Hampshire, or being intended to be performed in New Hampshire, it must be governed by the law of New Hampshire. In that case the Supreme Court of New Hampshire said : " It is a presumption of law that the parties to a promissory note stand to each other in the relation in which their signatures appear. The signers on the face of the paper are taken to be joint principals, unless some are designated as sureties, and the signers on the back to be indorsers in the order in which the names are written, if nothing in the terms of the indorsement indicate the contrary. In the case of a *bona fide* holder of such a note without notice this presumption is conclusive."

The question in that case was to determine whether certain indorsers appearing to be successive indorsers, were not in fact joint indorsers. It is evident that it has no bearing on the present case; and that the present case is covered by the reservation there made by the Supreme Court of New Hampshire. For there is that in the terms of Hadley's indorsement in the present case that does indicate to the contrary. There is the plain, palpable fact that he did not indorse in the course of indorsement and as a holder and owner of the note, but as a guarantor or original promissor to give it credit; for he necessarily indorsed before it was negotiated by the payee.

As a guarantor or original promisor, Hadley was not entitled to the demand and notice to which an indorser in the technical sense is entitled, and not being so entitled, there was nothing for him to waive. The waiver, therefore, was a nullity as to him, a mere act of supererogation. This the appellee was presumed to know. Such being the case,

the words of waiver are presumed to be effectual where they would in law be effectual; and that is in their application to the appellee, who was in contemplation of law the first indorser, and as such entitled to demand and notice that could be waived.

No adjudicated case has been cited to us in which the precise question here involved was in controversy. Reference has been made on behalf of the appellant to the case of *Paishley* v. *Heath*, 69 Me. 90, and to the case of *The Farmers' Bank* v. *Ewing*, 78 Ky. 266 ; and on behalf of the appellee to that of *The Central Bank* v. *Davis*, 19 Pick. 373. The case of *Paishley* v. *Heath* was one in which the payee, who was in fact the first indorser, wrote above his indorsement a general waiver of demand and notice ; and subsequent indorsers, who wrote their names beneath his, were held, in the absence of anything to indicate the contrary, to have adopted the waiver and made it part of their contract. In the case of *The Farmers' Bank* v. *Ewing*, 78 Ky. 266, there were printed on the back of the note the words "*The indorsers waive presentment, protest, and notice of dishonor*;" and in a suit against the payee, who was the first indorser, it was held that he was bound by this waiver.

On the other hand, a contrary rule seems to be maintained in the case of the *Central Bank* v. *Davis*, 19 Pick. 373, by the Supreme Court of Massachusetts. There a note had been discounted by the bank for the maker. There were two accommodation indorsers, the payee mentioned in the note being the first indorser, and the defendant in the suit the second. Over the signature of the first indorser were written in the handwriting of the maker of the note, the words " Waiving right to notice." The defendant claimed that these words were indorsed on the note after its indorsement by him and without his knowledge or consent; and this the plaintiff denied and controverted. The court undertook to decide the question on general principles and the presumptions of law, upon the assumption that the testimony

5 Ct. App.—2

on this point was equally balanced ; and it held that the waiver was only the individual waiver of the first indorser, and that the indorsement should be read as though there were written out in full the words, " I, Moses Roberts (the first indorser), waiving right to notice, do transfer this note to Joseph Davis (the second indorser and defendant in the suit)."

Other cases have been cited, but none of them seem to have any special bearing upon the question at issue here. There does not appear, therefore, to be any considerable preponderance of authority either way. Says Mr. Daniel in his work on Negotiable Instruments : " Sometimes the waiver is not embodied in the instrument itself, but is made by one of the indorsers by writing over his signature, 'I waive demand,' or 'I waive presentment,' or 'waiving demand and notice,' or 'I hold myself accountable without protest or notice,' or some such expression ; and in such cases the better opinion is that the waiver is simply the individual waiver of the indorser over whose signature it is written, and not binding upon others who do not make themselves parties to it. . . . But a contrary view has been taken in Maine ; and where the first indorser wrote over his signature, 'waiving demand and notice,' it was held that subsequent indorsers who merely appended their naked signatures, were bound by the waiver ; and that, if a subsequent indorser intended to exclude himself from its operation, he should use the words, 'requiring demand and notice.'" Sec. 1092a.

Mr. Daniel's authorities cannot be said fully to support what he regards as the better opinion upon the subject. But while we have doubts whether such is the better opinion, it is not necessary for us to decide here whether, when one indorser has placed a waiver of notice over his indorsement, every subsequent indorser must be presumed to have adopted that waiver in the absence of anything to indicate the contrary. We think the decision of this case can be placed upon a different ground.

Again, quoting from Mr. Daniel, we find a rule stated by him from which there is no dissent. He says: "Sometimes the waiver is embodied in the instrument itself; and in such cases the waiver enters into the contract of every party who signs it, whether as drawer, maker, acceptor or indorser." Sec. 1092. Now, a waiver may be embodied in an instrument in different ways. It need not necessarily appear on the face of it. So far, at least, as the indorsers are concerned, it may equally well appear on the back; and if it has been placed there at the time of the making of the note, or before indorsement and before the note was negotiated or put in circulation, it must be regarded as part of the original note as much as if it had been written or printed on the face of the note. It is quite clear to us that the words of waiver in this case were on the back of the blank form used for the note, not only before it was indorsed, but even before it was signed by the maker. The words are in print, about the middle of the back of the note; and the signatures of the indorsers are beneath at a place where they would not ordinarily have been written, if this printed formula had not then been indorsed on the note. Finding this printed formula on the back of the note, and placing their signatures with reference to it, the indorsers must be presumed to have seen and read the words, and to have adopted them in their contract.

It is very true that the appellee says in his testimony that "he had no recollection of seeing and did not observe the printed words on the back of the note at the time of indorsement of the note by him." But if the printed words were there at the time, he should have observed them, and he should not be allowed to escape liability by reason of his own negligence. We cannot assume upon such a statement as this by the defendant that the plaintiff's officers, after the note was delivered to them, were guilty of a gross and clumsy fraud of placing these words where they are now found, especially in view of the position of the signatures to which we

have adverted. And we must assume the commission of such a fraud, if the words were not there at the time when the defendant made his indorsement.

It is our opinion, therefore, that the appellee, at the time of his indorsement of this note, expressly waived his right to demand and notice in the event of its non-payment by the maker at maturity. And so thinking, we deem it wholly unnecessary to decide the question of the effect of the negotiations had after the maturity of the note as constituting a waiver.

As the judgment of the court below is based upon a contrary ruling, we must regard that ruling as error, and in consequence thereof reverse the judgment. *It is ordered, therefore, that the judgment of the court below in this cause be, and the same is hereby, reversed with costs; and the cause be remanded to that court, with directions to award a new trial.*