**VON BLAINE et al. v. SAUNDERS.**

No. 1024.

Municipal Court of Appeals for the District of Columbia.

Argued Feb. 12, 1951.

Decided March 27, 1951.

George E. C. Hayes and James A. Cobb Washington, D. C., for appellants.

Thomas J. Jackson, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiff was payee of a $5000 demand note made by Black Eagle Airlines, Inc., through its president, Hubert F. Julian, and its secretary, W. B. Graham. As such payee he sued defendants Jesse O. Dedmon, Jr. and Lloyd Von Blaine for $1250 each on the following indorsement which appeared on the back of the note:

"For value received we hereby guarantee payment of the within note without demand, notice, or protest, and hold ourselves bound for the payment thereof. In the amount set out after each said indorsers name.

| "/s/ Hubert F. Julian Pres. | $1250.00 |
| /s/ W. B. Graham | $1250.00 |
| /s/ Jesse O. Dedmon, Jr. | $1250.00 |
| /s/ Lloyd Von Blaine | $1250.00" |

The trial court gave judgment against Dedmon and Von Blaine in the full amount sued for and they appeal.

The suit grew out of a venture allegedly promoted by Julian, otherwise known as the "Black Eagle," for the purchase abroad and ultimate resale of jeeps and other American Army surplus goods. Whether Black Eagle Airlines, Inc., was actually incorporated was not made an issue in the trial but an agreement was received in evidence under which Julian was to serve as president, Von Blaine as vice-president, Dedmon as treasurer, and Graham as secretary until the first corporate meeting. All were stockholders. After various sums had been contributed which are not involved in the present suit, Julian and Graham came to Washington accompanied by plaintiff Saunders and a meeting was held with Dedmon and Von Blaine. At this meeting it was represented that Julian was going abroad to buy the jeeps and that additional funds were required and that Saunders was considering lending $5000 for the purpose indicated. Thereupon, Dedmon, a local attorney, drafted an ordinary promissory note for $5000 payable on demand to Saunders' order, with Black Eagle Airlines, Inc., as maker and the guaranty written on the reverse side of the note. At the same time the following agreement was also signed by the parties:

"This Agreement made this 17th day of May, 1949 at Washington, D. C. between The Black Eagle Airlines, Inc. and William A. Saunders is as follows:

"1. To wit: That for and in consideration of one dollar and other good and valuable considerations it is hereby agreed by and between the parties aforementioned that the Black Eagle Airlines, Inc. by and through its authorized agents do hereby transfer to William A. Saunders Five Thousand ($5,000.00) to be derived from the profits of the operation of the sale of Jeeps now under contract.

"2. It is further agreed by and between the aforementioned parties that this agreement transfers to William A. Saunders ten (10) shares of the eighty (80) shares of stock now held by Hubert F. Julian in the said Black Eagle Airlines, Inc.

"3. The term of this agreement runs during the life of the Black Eagle Airlines, Inc.

"The Black Eagle Airlines, Inc.
By /s/ Hubert F. Julian Pres.
/s/ W. B. Graham
/s/ Jesse O. Dedmon, Jr.
/s/ Lloyd Von Blaine
   Parties of the First Part
/s/ William A. Saunders
   Party of the Second Part"

The loan to be evidenced by the note was not made at this meeting, but the note, the guaranty and the supplemental agreement were signed and delivered to Graham, secretary of the corporation, because Saunders said he wanted to further consider whether or not to make the loan. All of the parties then went to New York from whence Julian was to sail for Europe the following day. In New York, in the presence of defendants as Saunders testified, he delivered a $5000 cashier's check to Graham and Graham delivered to him the promissory note. Thereafter the anticipated profits did not materialize and the instant suit was begun.[1]

The principal contention of defendants was that the note and the supplemental agreement must be read together and that under the latter the note was conditional and was to be paid solely out of profits from the resale of the jeeps to be purchased. Since the suit is between the original parties to the transaction, we agree that the agreement may be considered with the note in determining the intent of the parties.[2] But the note is not even mentioned in the agreement; the note in terms is unconditional. The agreement as well as the note was drawn by one of the defendants, a lawyer, and thus any ambiguity in the documents is to be construed most strongly at least against him.

1. Evidence was offered that suits against Julian and Graham had been instituted in New York but such evidence was rejected by the trial court on grounds not relevant here.

2. Davis v. Brown, 94 U.S. 423, 24 L.Ed. 204; Cafritz Const. Co. v. Mudrick, 61 App.D.C. 189, 59 F.2d 864; Baucom v. Friend, D.C.Mun.App., 52 A.2d 123.

We conclude that the trial court was entitled to find, as it did, that the note was not conditional.

Lack or failure of consideration is also urged by defendants, principally on the ground that no testimony was produced in support of plaintiff's evidence that a bank cashier's check was given to Graham by Saunders in exchange for the promissory note and also that the name of the payee on this check was not stated. But the trial court was entitled to accept Saunders' testimony and to believe that Graham, as secretary of the corporation, would not have accepted a check which he could not cash, particularly when Saunders testified that the check was delivered in the presence of defendants and that neither of them objected to it. We find no error in this respect.

Defendants' final assignment of error is that they were only secondarily liable as indorsers of the note and that no proof was offered that demand had been made upon Black Eagle Airlines, Inc., maker of the note. But assuming, although there is authority to the contrary, that defendants were only secondarily liable and hence that presentment to the maker was first necessary, we note that the note and the indorsement were set out textually in the bill of particulars attached to the complaint and that such indorsement guaranteed payment "without demand, notice, or protest." The only defenses advanced in the answer were lack of consideration, fraud and the failure to render an accounting for a "joint venture" into which all of the parties had entered. A finding on all of these points based upon sufficient evidence was made by the trial court against the contentions of defendants. Ordinarily, when a negotiable instrument has been dishonored by non-payment, notice of dishonor must be given indorsers in order to make them liable. But such notice may of course be waived.[3] It was waived here. Furthermore, although

vague in nature, we believe there was sufficient evidence that demand had actually been made upon one or more representatives of the "corporation." We find no error in the trial court's ruling.

Affirmed.

---

3. Code 1940, § 28–613; Code 1940, 28–721; Portsmouth Savings Bank v. Wilson, 5 App.D.C. 8; Spragins v. McCaleb, 237 Ala. 658, 188 So. 251; Krenerick v. Horton, 254 Mich. 12, 235 N.W. 810; Central Nat. Bank of Portsmouth v. Sciotoville Milling Co., 79 W.Va. 782, 91 S. E. 808.